GUS HERBERG v. THE STATE.

No. 5708.    Decided June 2, 1920.

1.—Embezzlement—Books—Evidence—Rule Stated.

Where upon trial of embezzlement a State's witness was permitted to testify that no remittance appeared upon the books of the company, such testimony was inadmissible in the absence of the production of said books, and the verification by him of their correctness, the witness not testifying from personal knowledge. Following Moore v. State, 83 Texas, 318.

2.—Same—Charge of Court—Want of Fraudulent Intent.

Where upon trial of embezzlement the evidence raised the issue of want of fraudulent intent on part of the defendant, the court should have submitted a requested charge thereon.

3.—Same—Felony—Misdemeanor—Charge of Court.

Where the evidence raised the issue that if there was any fraudulent intent, it only extended to an amount of money under the value of fifty dollars, the court should have submitted the requested charge on said phase of the case. Following Loving v. State, 44 Texas Crim. App., 375, and other cases.

Appeal from the District Court of Floyd. Tried below before the Honorable R. C. Joiner.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Kenneth Bain,* for appellant.—Cited Eilers v. State, 30 S. W. Rep.; 811.

As to question of book entries: Davis v. State, 136 S. W. Rep., 45. On question of court's charge: Godsoe v. State, 108 S. W. Rep., 388.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, Judge.—The conviction is for embezzlement. The appellant was the agent of a corporation dealing in oil, with a principal office at Fort Worth in this State, and local office at Floydada. The method of doing business and keeping accounts was that appellant, in making sales of oil for either cash or credit, was required to keep a record and make reports and remittances, blanks being furnished by the corporation. It was the custom to make a separate record of each transaction, thus a book was furnished on which the sale and the amount was recorded, dated, and signed by the purchaser. This book was made with carbon so that an original and two carbon impressions were taken. The original was delivered to the purchaser, one of the carbons sent to the principal office, and the other retained in the local office. If this sale slip represented a cash transaction, exchange or cashier's check was to accompany. If it represented a credit transaction, a charge was made against the purchaser upon the books of the company at the central office. These slips bore a serial number. On the 17th of August a sale amounting to $70.10 was made to Pope, and the ticket bore the serial number 292941. On receipt of the ticket the proper charge was made upon the books of the company at Fort Worth. On the 19th of August appellant collected from Pope $70.10, in payment of the account made on the 17th of August. Pope made the payment by check, payable to the appellant, drawn on the First State Bank of Floydada. At that time appellant had an account in the same bank, showing a credit balance of $71.64, and on receipt of the check from Pope it was deposited to appellant's credit together with other funds, making the total deposit on that day $87.35. Against this account he at once drew a check for $140.84, with which he purchased

a cashier's check payable to the oil company, and which he immediately remitted to the office in Fort Worth, accompanied by certain tickets designed "Cash Sales Collections," these tickets aggregating $122. The remitance was also accompanied by memorandum showing credit Sales Collections amounting to $18.50. The Cash Sales Collection tickets did not name the purchaser. One of them was for an item of $60.50. Other than as may be inferred from the tickets accompanying the remittance, nothing is shown by the evidence; that is to say, no direct testimony was given showing any unremitted sales or collections other than the $70.10, except that a witness for the State was permitted over appellant's objection to testify that no remittance covering the sale to Pope had been made. This witness was an employee of the company, and while not a keeper of its books, they were kept under his supervision, and we think the circumstances detailed by him were sufficient to permit him to testify to the correctness of the books of account kept under his supervision. But in the absence of the production of the books, and the verification by him of their correctness, we think it was not competent to state his conclusions touching their contents, and this, we think, was the character of his testimony to the effect that the account of the Pope sale had not been collected. He did not, as we understand it, purport to speak from personal knowledge, but from knowledge of the books which were under his control, available to the State, and which, if there contents were desired, should have been produced. Moore v. State, 83 Texas 318, 208 S. W. Rep., 918.

The court in his charge instructed the jury in substance that if appellant received from Pope $70.10 for his principal, and "did embezzle, fraudulently misapply, or convert to his own use said money, or any part thereof over $50, you will find the defendant guilty." He also instructed them in substance that if appellant remitted the $70.10 in payment of the Pope account, or thereafter paid it, to acquit him. The appellant sought to have the jury told that the deposit of the $70.10 to his credit in the bank, unless done with fraudulent intent, would not be a conversion. We think the circumstances were such as to demand such a charge on request. There was evidence that it was not contemplated that appellant would remit the checks received, but that he would use the funds in the purchase of exchange or cashier's check, and, as we understand the State's testimony, it was not contemplated that a separate remittance was to be made of each sale or collection, but the aggregate amount of the day's business was to be embraced in a single cashier's check. In various ways the appellant criticised the court's charge, among others contending that if not all then certainly the greatest part of the $70.10 collected from Pope was, on the day of its collection, remitted to his principal, and that the memorandum accompanying the cashier's check for $140 contained an item of $60.50, described as "Cash Sales Collections," the meaning of which was not otherwise explained; that it was not com-

petent for the court, as a matter of law, to determine that this item did not include at least a part of the money collected from Pope; and that the charge was incomplete in failing to affimatively present to the jury the view of the case that would enable them to have determined this matter, and to have drawn, if they would, the inference from the circumstances that the transaction did not evidence a fraudulent appropriation of the $70.10 to the use of appellant, and partiçularly that it did not evidence a fraudulent appropriation of an amount thereof exceeding $50. In view of the record, we think this view of the case should have been submitted to the jury in an appropriate charge, and that they should have been affirmatively told that although there was a fraudulent appropriation of a part of the $70.10 that the conviction could not be for more than a misdemeanor offense if the amount thus appropriated was less than the sum of $50. Loving v. State, 44 Texas Crim. Rep., 375; Day v. State, 71 Texas Crim. Rep., 414, 159 S. W. Rep.. 1186; Goodsoe v. State, 52 Texas Crim. Rep., 627.

The evidence that at the time the appellant remitted the $140.84 he did not include funds due because of the Pope account or that the remittance did not cover all that was due by him, is not so conclusive as to relieve the court from submitting the question to the jury in a manner more comprehensive than was done in the charge given, which was meager and abstract in its nature.

We have examined the other questions presented and arising from the record, and find nothing likely to occur upon another trial requiring further notice

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*